PER CURIAM.
In this dispute, the appellants sought a declaratory judgment to confirm their ownership of a small parcel of property. Ap-pellees brought a counterclaim for specific performance of an oral agreement by which the appellants allegedly agreed to convey the property to the appellees. The trial court’s final judgment denied appellants’ request for declaratory relief, granted appellees’ claim for specific performance, and ordered the appellants to deliver the deed to the appellees. We must reverse the final judgment because we agree with the appellants that the trial court erred in ordering specific performance of the alleged oral agreement.
Eugene Celano, the appellant, developed a medical office complex in 1982, and the appellees are some of the doctors who acquired interests in buildings in the complex. Celano retained a parcel fronting the roadway, and appellees’ buildings were located behind the retained parcel. The appellant constructed a sign on his retained parcel to advertise the professional practices of the doctors in the complex. This street-front signage was made available to the appellees at the time they acquired their property between 1982 and 1984. Ap *654 parently, the sign was not considered in the transactions in which the appellees’ acquired their interests.
Sometime in 1986, the parties discussed moving the sign to an adjoining piece of roadway frontage which was also owned by Celano. This small piece of property, which is the subject of the litigation, has only 19 feet of roadway frontage and is approximately 78 feet deep. At trial, the parties presented widely divergent accounts of what transpired in the course of these purely oral negotiations.
According to Eugene Celano, the sign fell into disrepair sometime in 1986 prompting one of the doctors to ask about upgrading the sign. Celano told the doctor that he intended to build on the property where the sign was located and he suggested that the sign be moved to the adjoining piece of roadway frontage. The decision whether to rent or sell the new site to the appellees could be made at some later time. The sign was relocated and the appellees were permitted to use the materials from the old sign. Sometime later, Dr. Dlabal approached Celano with the idea of expanding the sign. At this point, Celano informed Dlabal that he intended to charge $500 or $600 monthly rent for the use of the new site. The expansion was performed, and the appellees refused to pay rent for the site.
The appellees’ account of the transaction was related by Dr. McCoy who testified that he was designated by the other doctors to negotiate with Celano. According to Dr. McCoy, it was Celano who approached appellees and asked that the sign be relocated so that he could build on his property. He agreed to deed the subject property to the appellees if they would incur the cost of moving the sign. After appellees moved the sign and Celano declined to transfer the property, litigation ensued which included appellees’ counterclaim for specific performance of the oral agreement.
During cross-examination by appellant’s counsel, Dr. McCoy revealed some inconsistencies in appellees’ position. First, he conceded that only the roadway portion of the subject property was to be used as the new site for the sign; Celano intended to use the remaining portion of the subject property as a parking lot. This contradicted the appellees’ counterclaim for specific performance which sought a deed to the entire parcel. In addition, it was unclear as to which parties were the intended recipients of the property. Dr. McCoy’s confusion on this point is evident from the following testimony:
[APPELLANTS’ ATTORNEY] Okay. How should a deed be made out? ...
[DR. McCOY] A shared ownership to each of the buildings that existed in the complex.
[ATTORNEY] So we are going to give a deed to buildings and not to people?
[DR. McCOY] Okay.
Even if Dr. McCoy only meant that ownership of the subject property should be proportional to the appellees’ building ownership, this would still be inconsistent with the overall transaction. Although the ap-pellees contributed equal amounts to pay for the relocation of the sign, they did. not have equal ownership interests in the buildings. If building ownership was to be the key, as suggested by Dr. McCoy, then the appellees should have contributed relocation expenses in proportion to their ownership interest in the buildings. Furthermore, Dr. Keller, a nonparty, testified that he had no agreement with Celano and did not claim ownership over the subject property though he was a building owner who had contributed to the relocation and construction of the sign.
In its final judgment, the trial court granted appellees’ counterclaim for specific performance of the oral agreement. Without going into the details of the agreement, the trial court ordered the appellants to execute a warranty deed conveying approximately one-third of the property to the appellees as equal tenants in common; the other two-thirds farthest from the roadway was to remain with the appellants. This appeal followed.
It is well established in Florida that part performance will remove an oral contract from the statute of frauds and enable it to *655 be specifically enforced in equity. This part performance doctrine ensures that the statute of frauds cannot itself become an instrumentality of fraud. “So if a man agrees to sell his property to another, whom he places in possession and from whom he accepts a part of the purchase price, he cannot avail himself of the statute of frauds to defeat a suit for specific performance, for if he is successful he will have committed a fraud upon the buyer by at once benefitting from the agreement and escaping responsibility under it.” Dixon v. Clayton, 44 So.2d 76, 77 (Fla.1949); see also, Elsberry v. Sexton, 61 Fla. 162, 54 So. 592 (1911); Winters v. Alanco, Inc., 435 So.2d 326 (Fla. 2d DCA 1983).
To obtain specific performance of an oral contract to convey real estate, the party seeking specific performance must first establish the oral contract by clear, definite and certain proof; a preponderance of the evidence is not sufficient. Miller v. Murray, 68 So.2d 594 (Fla.1953); Unatin v. Hudon, 383 So.2d 1131 (Fla. 5th DCA 1980); Hi-Acres Groves, Inc. v. Bassett, 338 So.2d 1076 (Fla. 4th DCA 1976); 1 R. Boyer, Florida Real Estate Transactions § 1.03 (1991). In addition, the following elements must be proved:
(1) Payment of all or part of the consideration;
(2) Possession by the alleged vendee; and
(3) The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or
(4) In the absence of improvements, the proof of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.
Miller, 68 So.2d at 596; Winters, 435 So.2d at 329.
In the instant case, the appellees failed to make the threshold showing which required “clear, definite and certain proof” of the terms of the oral contract. Even if the trial court entirely dismissed Eugene Cela-no’s testimony, and accepted Dr. McCoy’s account as the “agent” for the appellees, there would still be significant ambiguities in the alleged oral agreement. Most notably, there was confusion concerning the amount of property to be conveyed; although the appellees’ counterclaim sought title to the entire parcel, the appellees later became convinced that only a portion of the parcel was subject to the agreement. Equally perplexing is the confusion surrounding the appellees’ respective interests in the transferred property. Having failed to establish the oral contract with the requisite proof, the appellees’ could not obtain specific performance regardless of whether they could prove the additional elements enumerated above.
In sum, we reverse that portion of the final judgment ordering specific performance of the oral agreement. On remand, the trial court can consider whether appellants are entitled to their requested declaratory judgment, and whether they should prevail on their claims for ejectment and damages. Accordingly, the final judgment is REVERSED and REMANDED.
ERVIN, ZEHMER and MINER, JJ., concur.